MOSES JOHNSON *versus* WILLIAM WINGATE.

When a master of a vessel, in selling the same under instructions of the owner, exceeds his authority, the principal is not bound.

One dealing with a master, who is acting under special authority, is bound to know the extent of it.

If a principal does not, in a reasonable time after actual notice of his agent's act, or after notice is to be presumed, disapprove of the conduct of his agent, a presumption of assent and ratification will arise.

But when an agent, who has exceeded his authority, omits to inform his principal of his proceedings and there is nothing from which he can be presumed to know them, if the principal, within a few days after making the discovery, disavows the proceedings, he cannot be held to have ratified them, although performed more than five years previously.

TROVER for the brig Hero. The case came before the

Johnson *v.* Wingate.

Court upon a statement of facts. In 1840, the plaintiff was the owner of the brig, and was indebted to the defendant for supplies furnished the vessel. The master, as the agent of the plaintiff, was then called on for payment. He wrote to the plaintiff, who in reply authorized him as his agent " to make conveyance of the brig to said Wingate, together with her appurtenances and all earnings then on hand, provided said Wingate shall give back to you an agreement to reconvey the vessel to me whenever I pay him the amount of my indebtedness and all bills which he may pay against the vessel, it being understood, that he is to retain all the net earnings of the vessel while in possession, he to pay all the debts now due from her."

In Nov. 1842, the master, under this authority, executed a bill of sale of the vessel and appurtenances to the defendant and paid over to him the earnings on hand, taking back an agreement to reconvey to plaintiff " whenever he shall pay the amount of his indebtedness to me, being $4575,00, together with all sums which I may pay on debts now due from the vessel, it being understood that I am to retain all the net earnings of the vessel while in my possession without any liability to account for the same."

The vessel was not delivered to the defendant until one year afterwards. The master took possession of the agreement at the time it was made and ever since kept the same, without giving any notice of its particular contents to the plaintiff, nor was there any evidence that the plaintiff knew any thing of its contents, or that it was not in conformity with his instructions, until about the first of January, 1849.

Since the defendant took possession, he has received all the net earnings, amounting to $3650,00, the same master having continued in command.

On the 10th Jan. 1849, the plaintiff demanded of the defendant the possession of the vessel, and he refused to deliver it.

Upon these facts, the Court were to enter a nonsuit or default. In case a default should be entered, damages were to be assessed by an auditor.

*G. F. Emery*, for defendant, contended that there was in reality no transcending of his authority by the agent of the plaintiff. It was expressly stipulated by the principal that the defendant was to retain all the net earnings of the vessel, and this must have been designed for the defendant's own use. Why this stipulation unless for him? Unless the plaintiff had so understood it, he would have added a clause to have it accounted for to himself. If it is said such a construction is not tenable, for it would operate as a hard bargain, the reply is, that the Court cannot infer that from the agreement itself. The instrument itself is to be a guide to the intentions of the parties, and not the consequences which have resulted from it.

But the bargain was no harder than the defendant had a right to exact. He did not want the vessel, but his pay, and it was thus put into his hands, the earnings to go to the defendant, to quicken the plaintiff to discharge the debt. Wingate might have attached and sold the brig, and raised his pay immediately, and thus have deprived Johnson of the power of redeeming her, but this trade was made instead, and quite as much to the advantage of the plaintiff as defendant.

But if the master did not precisely follow the instructions of the plaintiff, the conveyance was valid, because it has been assented to and ratified by the plaintiff. Both parties have treated the transaction as binding. The defendant has been in possession under the bill of sale nearly six years, and the Court might well have presumed, the property to have passed to defendant, even if there had been no bill of sale. *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick. 297; 7 Cranch, 299; Smith's Mercantile Law, page 100.

If the plaintiff did not know the contents of the agreement, that is not the fault of the defendant, who had no control over it; and the delivery of it to the master, was in law a delivery to the plaintiff. *Shaw* v. *Nudd*, 8 Pick. 9; 8 Pick. 56.

But again, the transaction was in the nature of a mortgage, and therefore this action cannot be maintained for two reasons: —

Johnson *v.* Wingate.

1. The mortgage debt has not been paid or tendered by the plaintiff.

2. The property became forfeited by a foreclosure, the defendant having had possession more than " sixty days," the period named in the statute.

Again, trover cannot be maintained except on the ground of *fraud* on the part of th . defendant, and the only pretence by the other side is, that the agent transcended his authority.

*Shepley* and *Dana*, for plaintiff.

SHEPLEY, C. J. — This is an action of trover for the brig Hero. The case is presented upon an agreed statement of the facts. A conveyance of the vessel was made by the master, acting as the agent of the plaintiff, to the defendant on November 1, 1842. The questions presented are, whether the master had authority to make such a conveyance as he did make ; and if not, whether his proceedings have been ratified by the plaintiff.

A principal is bound by the acts of his general agent, performed within the scope of his general authority, although such agent may exceed or violate his instructions, relating to that particular transaction.

The master of a vessel is the general agent of the owner for certain purposes, but such general authority is not sufficiently broad to authorize him to sell her except in case of wreck or other extreme necessity.

An agent acting under a limited power to do a particular act, must conform to the authority given, or his acts will not bind his principal. A special authority must be strictly pursued, and those dealing with one thus authorized, must ascertain the extent of his authority. *Fenn* v. *Harrison*, 3 T. R. 757 ; *De-Bouchout* v. *Goldsmid*, 5 Ves. 211 ; *Munn* v. *Commission Co.*, 15 Johns. 44 ; *Denning* v. *Smith*, 3 Johns. Ch. 345 ; *Keith* v. *Purvis*, 4 Descau, 114.

In the present case, the defendant appears to have known upon what conditions the master was authorized to convey the vessel to him. The agreement, which obliged him to reconvey

shows, that it must have been made with a knowledge of the letter authorizing the reconveyance. By the agreement to reconvey, which it required, he was authorized to retain her net earnings while she continued in his possession. If he had executed such an agreement, there can be no doubt that he must have accounted for them towards payment of the debt due him, for the object of the conveyance was to secure the payment of that debt. He gave to the master, not such an agreement, but one authorizing him to retain those earnings " without any liability to account for them." The master was not authorized to make a conveyance of the vessel upon such terms. It would seem that the defendant must not only have known this, but must have inserted such a clause, in fraud of the plaintiff's rights. In another respect, the agreement to reconvey does not appear to have been in conformity to the authority given to the master. But as it may not have been material, it may be permitted to pass without observation.

The only serious question presented by the case is, whether the plaintiff must be presumed from the long lapse of time, to have ratified a conveyance made without authority.

It is the duty of an agent to keep his principal informed of his proceedings, and in the absence of proof to the contrary, he may be presumed to have done so, within a reasonable time. And if the principal does not within a reasonable time after actual notice, or after notice is to be presumed, disapprove of the conduct of his agent, a presumption of assent and ratification will arise.

The application of these rules would wholly preclude the plaintiff after such a lapse of time, from disavowing the authority of the master and from claiming the vessel as his property, if it were not agreed, that the master did not perform his duty by giving information of his proceedings, and that there is no evidence that the plaintiff in any other way came to the knowledge, that he had acted contrary to his instructions, until a few days before his disavowal of his acts was made known to the defendant.

The principal cannot be held to have ratified the unauthor-

ized acts of an agent, until he either has a knowledge of them, or must be presumed to have had, from the nature or course of the business, or from the presumed performance of duty by the agent in giving him the proper information.

In the present case the nature or course of the business, would not bring that knowledge home to the plaintiff. The case admits that the master continued in the vessel in the employment of the defendant. It does not appear how constantly he was at sea, or what opportunities the plaintiff had to obtain a knowledge of his proceedings. So far as appears, the plaintiff may have supposed, that the master conformed to his instructions, and that the defendant was in possession of the vessel and receiving her earnings in payment of the debt due to him, until after the lapse of years he obtained information that the vessel had earned $3650, which instead of being applied to pay his debt was to be retained by the defendant without any account, and that he was to be left to pay the whole debt with accumulated interest.

Under such circumstances, presenting an unfair course of dealing on the part of the defendant, suited to act oppressively upon the plaintiff, the Court cannot be called upon to presume from the mere lapse of time, that the plaintiff had ratified a conveyance made without authority and so destructive of his interests, especially when there does not appear to have been any change of circumstances during the time.

It is contended that the action cannot be maintained, because the transaction was of the nature of a mortgage; that the money to be secured, has not been paid, and that the property has been forfeited by a foreclosure.

It is undoubtedly true, that the conveyance, had it been effectual, would have been a mortgage. Having been made without authority it was ineffectual for any purpose; and there could be no foreclosure.

The defendant having possession of the property of the plaintiff without any legal right to it, the demand and refusal operated as a legal conversion. The defendant is to be defaulted and the damages are to be assessed by an auditor.